1  **WO**

2  NOT FOR PUBLICATION

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Cruise Quote Inc., an Arizona corporation, | No. 2:10-CV-00318-PHX-GMS |
| Plaintiff, | **ORDER** |
| vs. | |
| Crystal Cruises, Inc., a California corporation; *et al.* | |
| Defendants. | |

Pending before the Court is Crystal Cruises, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction. Doc. 24. As set forth below, the Court denies the Motion.[1]

## BACKGROUND[2]

Defendant Crystal Cruises, Inc. ("Crystal") is a luxury cruise line domiciled in Los, Angeles, California. Doc. 1 at ¶ 4. Crystal does not employ its own travel agents; instead, it uses an "On-Line Lead Generation Program" (the "On-line Program"), which captures

---

[1] The parties' requests for oral argument are denied as the Court has determined that oral argument will not aid in its decision. *See Lake at Las Vegas Investors Group v. Pac. Malibu Dev.*, 933 F.2d 724, 729 (9th Cir.1991).

[2] These facts are taken from Cruise Quote's Complaint and from the affidavits and exhibits filed in connection with the Motion to Dismiss. The Court has accepted the allegations in Cruise Quote's complaint as true to the extent they are uncontroverted by affidavits and exhibits. Where conflicts exist between the facts contained in the parties' affidavits and exhibits, those conflicts have been resolved in Cruise Quote's favor. *See Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002).

information from interested customers and sends that information to company-approved travel agents. *Id.* at ¶ 19. These agents then solicit and book actual travel accommodations. *Id.* Under the On-Line Program, potential leads are transferred to individual travel agents, who have approximately twenty-minutes to claim a lead before it is passed on to another agent. *Id.* at ¶ 25–26.

In 2009, Travel Door, Inc. ("Travel Door") began participating in the On-line Program. *Id.* at ¶ 22. At this time, leads were sent to participating travel agencies twenty-four hours a day, including nights and weekends. *Id.* at ¶ 25–26. To receive leads during off-hours, however, agencies were required to specify that they were actually available to monitor and process leads. *Id.* at ¶ 28. Hence, agencies like Travel Door, who were unable to staff their offices during non-peak hours, lost the opportunity to pursue leads that became available during those times. *See id.* at ¶ 30.

In May 2009, Plaintiff Cruise Quote, Inc. ("Cruise Quote") learned that some of the participating travel agencies were losing potential customers because they were unable to obtain Crystal leads during non-peak hours. Viewing this as a potential business opportunity, Cruise Quote agreed to service Travel Door's leads during non-peak hours. *Id.* at ¶ 34. After successfully providing these services to Travel Door, Cruise Quote contacted other participating agencies and offered the same services to them. *Id.* at ¶ 36. In August 2009, Cruise Quote's solicitations were brought to the attention of Crystal's Vice President of Marketing, Nitsa Lewis ("Ms. Lewis"). *Id.* at ¶ 37. Shortly thereafter, Ms. Lewis sent an email to forty-three separate travel agents, two of which are located in Arizona, prohibiting these agencies from using Cruise Quote's services and informing them that use of these services would result in termination of those agencies' access to the On-line Program. Doc. 25 Ex. 3.

Following the August 7, 2009 email, Ms. Lewis terminated Travel Door's access to the On-Line Program and demanded that Travel Door immediately terminate its contract with Cruise Quote. Doc. 1 at ¶ 38. Travel Door then unilaterally terminated its contract with Cruise Quote. *Id.* at ¶ 42. On February 12, 2010, Cruise Quote initiated this action raising

four causes of action: (1) Intentional Interference with a Contractual Relationship, (2) Intentional Interference with Business Expectancy, (3) Injurious Falsehood, and (4) Business Defamation. *Id.* Crystal now moves to Dismiss for Lack of Personal Jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). Doc. 24.

**LEGAL STANDARD**

When the parties dispute whether personal jurisdiction over a foreign defendant is proper, "the plaintiff bears the burden of establishing that jurisdiction exists." *Rio Props.*, 284 F.3d at 1019. This is so, even though the defendant is the moving party on a 12(b)(2) motion. *Id.* In the absence of an evidentiary hearing, however, the plaintiff need only make "a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Brayton Purcell LLP v. Recordon & Recordon*, 575 F.3d 981, 985 (9th Cir. 2009) (citing *Pebble Beach Co. v. Caddy,* 453 F.3d 1151 (9th Cir. 2002)). In considering the motion, a court may "assume the truth of allegations in a pleading" to the extent that such allegations are not "contradicted by affidavit." *See Data Disc, Inc. v. Sys. Tech. Assoc.*, 557 F.2d 1280, 1284 (9th Cir. 1977) (citing *Taylor v. Portland Paramount Corp.*, 383 F.2d 634, 639 (9th Cir. 1967)); *see also Rio Props.*, 284 F.3d at 1019 (observing that only "uncontroverted allegations in [the] complaint must be taken as true"). Where there are "conflicts between the facts contained in the parties' affidavits," depositions, and other filings, those conflicts "must be resolved in [the] plaintiff's favor." *Am. Tel. & Tel., Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir.1996) (internal quotations omitted). In cases where a plaintiff survives the motion to dismiss under a prima facie burden of proof, the plaintiff still must prove the jurisdictional facts by a preponderance of the evidence at a preliminary hearing or at trial. *Data Disc*, 557 F.2d at 1285 n. 2.

To establish that personal jurisdiction over a defendant is proper, the plaintiff must demonstrate that (1) the state's long arm statute confers jurisdiction over that defendant; and (2) that "the exercise of jurisdiction comports with the constitutional principles of Due Process." *See Rio Props.*, 284 F.3d at 1019 (citation omitted). Because Arizona's long-arm statute extends jurisdiction "to the maximum extent permitted by the . . . Constitution of the

United States," the Court's personal jurisdiction inquiry largely collapses into an analysis of Due Process. *See* Ariz. R. Civ. P. 4.2(a); *Davis v. Metro Prods., Inc.*, 885 F.2d 515, 520 (9th Cir. 1989); *Williams v. Lakeview Co.*, 199 Ariz. 1, 5, 13 P.3d 280, 282 (2000).

**DISCUSSION**

A court may exercise specific jurisdiction[3] over a defendant when the cause of action arises directly from the defendant's contacts with the forum state. *See Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990). The Ninth Circuit employs a three-part test to determine whether the defendant's contacts with the forum state are sufficient to subject it to specific jurisdiction. *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995). Under this three-part inquiry, specific jurisdiction exists only if: (1) the defendant *purposefully availed* itself of the privileges of conducting activities in the forum, thereby invoking the benefits and protections of its laws, or *purposely directs* conduct at the forum that has effects in the forum; (2) the claim *arises out* of the defendant's forum-related activities; and (3) the exercise of jurisdiction comports with fair play and substantial justice, *i.e.*, it is reasonable. *Id.*; *see also Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000) (citing *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 417 (9th Cir. 1997)). Under this three-step analysis, Crystal is subject to specific jurisdiction in Arizona.

**I.     Purposeful Direction**

In cases sounding in tort, the Ninth Circuit employs a purposeful direction analysis. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2002); *see Brainerd v. Governors of the Univ. of Alberta*, 873 F.2d 1257, 1259 (9th Cir. 1989) (applying effects test to defamation and tortious interference with contract claims). This three-part test for purposeful direction provides:

---

[3]A court may also assert general jurisdiction over a defendant if the defendant's activities in the state are substantial or continuous and systematic, even if the cause of action is unrelated to those activities. *Helicopteros Nacionales de Colombia, S. A. v. Hall*, 466 U.S. 408, 415 (1984). Because specific jurisdiction is appropriate in this case, the Court need not decide the issue of general jurisdiction.

> *Calder* stands for the proposition that purposeful availment is satisfied even by a defendant "whose only 'contact' with the forum state is the 'purposeful direction' of a foreign act having effect in the forum state." ... [Under] *Calder,* the "effects" test requires that the defendant allegedly have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state.

*Id.* at 803 (citing *Dole Food Co. v. Watts,* 303 F.3d 1104, 1111 (9th Cir. 2002)). In cases of defamation, the Ninth Circuit has specifically held that "circulation of the libel in the forum jurisdiction is a key factor in determining whether a nonresident defendant has sufficient contacts with the forum." *Casualty Assur. Risk Ins. Brokerage Co. v. Dillon*, 976 F.2d 596, 600 (9th Cir. 1992) (citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 (1984)).

Utilizing Cruise Quote's defamation claim as a basis for purposeful direction, Crystal's actions satisfy each prong of the "effects" test. The first prong is met because Ms. Lewis, acting on behalf of Crystal, committed an intentional act by sending the allegedly defamatory email to a total of forty-three separate travel agencies. Doc. 24 Ex. 1. The second prong is satisfied because Ms. Lewis admits in her own affidavit that the email was sent to individuals in Arizona. *Id.* at ¶ 14. Finally, the third prong is met because, as alleged in Cruise Quote's complaint and affidavits, Ms. Lewis knew[4] that Cruise Quote is an Arizona company. Doc. 25 Ex. 3. Knowledge of Cruise Quote's business location indicates that Ms. Lewis knew or should have known that releasing this allegedly defamatory email would harm Cruise Quote's business potential in Arizona.

The fact that only two of the forty-three emails were sent to Arizona does not alter this analysis. The percentage of distribution by location is irrelevant because "[i]f a

---

[4]According to Crystal, Ms. Lewis did not know that Cruise Quote was an Arizona resident. Cruise Quote, however has submitted affidavit evidence suggesting that Ms. Lewis did in fact know of Cruise Quote's Arizona residence. According to Cruise Quote, Ms. Lewis sent her allegedly defamatory email *after* she received a letter of introduction, which contained Cruise Quote's Arizona address. *See* Affidavit of Kit Kilgore at ¶ 13. For the purposes of this Order, therefore, the Court has accepted this allegation as true. *See Rio Props.*, 284 F.3d at 1019 (holding that where conflicts exist between the facts contained in the parties' affidavits and exhibits, those conflicts must be resolved in the plaintiff's favor).

jurisdictionally sufficient amount of harm is suffered in the forum state, it does not matter that even more harm might have been suffered in another state." *Yahoo! Inc. v. Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1207 (9th Cir. 2006). Here, a jurisdictionally sufficient amount of harm has occurred in Arizona because the defamatory email allegedly dissuaded the Arizona recipients from doing business with Cruise Quote.

Yet, even if the defamation claim were not jurisdictionally sufficient, Cruise Quote's tortious interference with contractual relations claim also indicates that Crystal purposely directed its conduct at Arizona. According to Cruise Quote's Complaint, Crystal allegedly committed an intentional act when it ordered Travel Door to terminate its contract with Cruise Quote. The alleged effect of Crystal's conduct occurred in this forum because Cruise Quote, an Arizona company, suffered damages in Arizona when the contract was prematurely terminated. Similarly, Ms. Lewis knew or should have known that her allegedly tortious act would harm Cruise Quote's Arizona business. Accordingly, because Ms. Lewis, on behalf of Crystal, allegedly committed tortious conduct with knowledge that her conduct would have effect in Arizona, the purposeful direction element is satisfied.

## II. Arising Out Of Forum Related Contacts

The Ninth Circuit has adopted a "but for" test for determining whether a plaintiff's cause of action arises out of a defendant's forum related activities. *See Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 271 (9th Cir. 1995). The "arising out of" requirement is met if but for the contacts between the defendant and the forum state, the cause of action would not have arisen. *See Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 561 (9th Cir. 1995). In *Shute v. Carnival Cruise Lines*, the Ninth Circuit reasoned that:

> The "but for" test is consistent with the basic function of the "arising out of" requirement—it preserves the essential distinction between general and specific jurisdiction. Under this test, a defendant cannot be haled into court for activities unrelated to the cause of action in the absence of a showing of substantial and continuous contacts sufficient to establish general jurisdiction. . . . The "but for" test preserves the requirement that there be some nexus between the cause of action and the defendant's activities in the forum.

897 F.2d 377, 385 (9th Cir. 1990), *overruled on other grounds*, 499 U.S. 585 (1991).

But for Crystal's decisions to send the allegedly defamatory email to Arizona companies, Cruise Quote's cause of action would not lie in Arizona. Though Crystal appears to argue that Cruise Quote's claims are unrelated to the two emails sent in Arizona, a review of the complaint reveals that a sufficient portion of Cruise Quote's claim arises from Crystal's emails to the Arizona travel agents. By sending the allegedly defamatory email to Arizona residents, Crystal interfered with Cruise Quote's ability to do business here and Cruise Quote brings its complaint to recover for that loss of business. The crux of the but for analysis is not necessarily the location of the tortious act; instead, it is whether that act is connected to the forum state. Here, the email, Crystal's contact with Arizona, is a substantial source of Cruise Quote's claim for defamation.

Similarly, there is a sufficient nexus between Cruise Quote's tortious interference claim and Crystal's activities that were allegedly directed at Arizona. Cruise Quote's claim arises from Crystal's alleged interference with Cruise Quote's contract with Travel Door. But for Ms. Lewis's *knowing* decision to require that Travel Door's terminate its contract with an Arizona company, Cruise Quote's cause of action would not have arisen.

### III. Reasonableness

An unreasonable exercise of jurisdiction violates the Due Process Clause even if the "purposeful availment" and "arising out of" requirements of the specific jurisdiction test are satisfied. *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Ziegler v. Indian River County*, 64 F.3d 470, 474–75 (9th Cir. 1995). If the first two requirements are satisfied, however, courts will presume that the exercise of jurisdiction over a defendant is reasonable. *See Ballard*, 65 F.3d at 1500. To rebut this presumption, a defendant carries the heavy burden of "'present[ing] a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Id.* (quoting *Burger King*, 471 U.S. at 477). The Ninth Circuit considers the following seven factors to determine whether the exercise of specific jurisdiction over a defendant is reasonable: (1) the extent of the defendant's purposeful

interjection into the forum state; (2) the burden on the defendant of litigating in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the dispute; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980) (listing several of the seven factors)*; Ziegler*, 64 F.3d at 475 (citing *Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 561 (9th Cir. 1995)). None of these factors weigh in favor of finding jurisdiction in Arizona to be unreasonable.

## CONCLUSION

For the forgoing reasons, the Court finds that Cruise Quote has made a prima facie case for exercising personal jurisdiction over Crystal.

**IT IS THEREFORE ORDERED** that Crystal's Motion to Dismiss for Lack of Personal Jurisdiction is **DENIED**. *See* Doc. 24.

DATED this 12th day of July, 2010.

_____
G. Murray Snow
United States District Judge